UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----

| | |
|---|---|
| THE DEVELOPMENT ACQUISITION GROUP, LLC.; and TEAM INVESTORS, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>eaCONSULTING, INC.; ROBITAH MOHDKHATIB,<br><br>    Defendants.<br><br>AND RELATED CROSS CLAIM. | No. 2:08-cv-03008-MCE-JFM<br><br><br><br>**MEMORANDUM AND ORDER** |

----oo0oo----

Through this action, Defendant and Cross-Claimant ea Consulting, Inc. ("EA") moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]

///

///

---

[1] Unless otherwise noted, all further references to Rule or Rules are to the Federal Rules of Civil Procedure.

1

EA seeks disposition of two issues: first, whether EA is entitled to the return of all interest paid to Plaintiff and Cross-Defendant Development Acquisition Group ("DAG") under Cal. Civ. Code § 1916-2; and second, whether EA should be awarded treble damages on interest paid under Cal. Civ. Code § 1916-3.  For the reasons set forth below, EA's Motion is granted in part and denied in part.[2]

**BACKGROUND**

In late 2006, DAG executed a $500,000 loan to EA pursuant to a Convertible Promissory Note secured by a Stock Pledge Agreement.  In the Stock Pledge Agreement, EA's CEO, Chin K. Wong ("Wong"), pledged his personal shares of stock in EA as security for the loan.  (Undisp. Facts No. 1).  The Convertible Promissory Note memorializing the loan set forth an interest rate of 8% over the course of ninety days with a provision for an increase to 12% in the event of default.  (Decl. of Chin K. Wong, Ex. 7).

EA defaulted on this loan and the parties thereafter negotiated a loan modification agreement memorialized by a Second Convertible Promissory Note (the "Note") and a Stock Pledge Agreement ("Pledge Agreement").  Under that modification, the principal due was increased to $525,000.

///
///

---

[2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 230(g).

2

The $525,000 figure represented the original principal plus DAG's claim for $40,000 in accrued interest through January 1, 2007 on the first promissory note, less a $15,000 payment made by EA. (Undisp. Facts No. 2). The Note contained the same terms as the original loan of an 8% interest rate over ninety days, amounting to an annual yield of 32%.

DAG alleges that EA defaulted on the Note. On May 29, 2007, DAG held a public auction for Wong's pledged shares of EA under the terms of the Pledge Agreement and sold the shares to Team Investors, a party to this action. (Compl. ¶16, 17). On July 14, 2008, after a failed attempt to reach a forbearance agreement between the parties, DAG sent the president of EA a letter requesting the transfer of Wong's shares to Team Investors. (Id. at ¶20-21). EA refused to accommodate that request. (Id. at ¶22).

To date, EA has paid a total of $558,519.13 on the loan, but DAG alleges that $256,804.07 is still owed. (Decl. of Shaun Fields Ex. A). After failed negotiations, DAG filed suit, alleging breach of contract for defaulting on the loan and seeking an order compelling transfer of the pledged shares. EA counter-claimed, arguing that the 32% annual interest rate sought by DAG violates California usury law pursuant to California Constitution Article XV § 1 and Cal. Civ. Code § 1916-2. The parties dispute whether any exception to California's usury laws apply.

///
///
///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Rule 56(c)).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Rule 56(a) ("A party seeking to recover upon a claim...may...move...for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Rule 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

4

1     If the moving party meets its initial responsibility, the
2 burden then shifts to the opposing party to establish that a
3 genuine issue as to any material fact actually does exist.
4 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
5 585-587 (1986); First Nat'l Bank v. Cities Ser. Co., 391 U.S.
6 253, 288-289 (1968).
7     In attempting to establish the existence of this factual
8 dispute, the opposing party must tender evidence of specific
9 facts in the form of affidavits, and/or admissible discovery
10 material, in support of its contention that the dispute exists.
11 Rule 56(e).  The opposing party must demonstrate that the fact in
12 contention is material, i.e., a fact that might affect the
13 outcome of the suit under the governing law, and that the dispute
14 is genuine, i.e., the evidence is such that a reasonable jury
15 could return a verdict for the nonmoving party.  Anderson v.
16 Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v.
17 Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d
18 347, 355 (9th Cir. 1987).  Stated another way, "before the
19 evidence is left to the jury, there is a preliminary question for
20 the judge, not whether there is literally no evidence, but
21 whether there is any upon which a jury could properly proceed to
22 find a verdict for the party producing it, upon whom the onus of
23 proof is imposed."  Anderson, 477 U.S. at 251 (quoting
24 Improvement Co. v. Munson, 14 Wall. 442, 448 (1872)).
25 ///
26 ///
27 ///
28 ///

5

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.  In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  Anderson, 477 U.S. at 255, see also Matsushita, 475 U.S. 587.

## ANALYSIS

**A.    Return Of All Interest Paid**

Under California law, unless a lender falls into one of the exemptions approved by the state legislature, it may not charge more than 10% interest per annum on a loan.  Cal. Const. Art. XV § 1.  An interest rate in excess of 10% is usurious, and if a lender negotiates a loan at a usurious rate absent a qualified exemption, the agreement shall be void and the lender will have no action at law to recover any interest. Cal. Civ. Code § 1916-2.

California does provide certain exemptions from usury laws for sophisticated parties engaged in a commercial transaction. Cal. Corp. Code § 25118.  The exemption for such commercial transactions does not apply, however, where there is any evidence that the debt was issued or guaranteed by an individual.  Cal. Corp. Code § 25118(e)(1).

///

6

1 The term "guaranteed" means "guaranteed as to payment of
2 principal, interest, dividends or call premium." Cal. Corp. Code
3 § 25007. A "guarantor" under the California Civil Code is one
4 who hypothecates property as security for a debt. Cal. Civ. Code
5 § 2787.

6     The parties dispute whether the loan transaction at issue is
7 subject to exemption from usury laws under Cal. Corp. Code
8 § 25118. EA contends that the loan is not exempt from usury laws
9 because Wong's personal property was pledged as a "guarantee" for
10 payment of the principal and interest pursuant to § 25118(e)(1).
11 DAG, in contrast, argues that a non-recourse pledge is not a
12 guarantee. According to DAG, to find otherwise misconstrues the
13 statute. DAG argues that this Court's interpretation of
14 § 25118(e)(1), that the exemption does not apply "if a loan is
15 guaranteed by personal assets," (ECF No. 29 at 5) misstates the
16 intent of the statute because language contains no specific
17 reference to personal assets.

18     DAG cites to no authority and gives no further explanation
19 illuminating the difference between a pledge agreement which
20 proffers an individual's personal assets and an individual's
21 personal guarantee within the meaning of § 25118(e)(1). The fact
22 that the statute does not overtly mention "personal assets" is
23 irrelevant as a guarantor will, by definition, be personally
24 liable, with his or her personal assets legally accessible to the
25 lender, upon default of the loan. In either scenario, the
26 individual's personal assets are placed at risk if the debtor
27 defaults on the loan.
28 ///

The difference between a pledge agreement and a personal guarantee as to loss of personal assets is only that the former limits personal liability to the amount pledged.

DAG contends that the pledge agreement is not a personal guarantee for the payment of principal or interest. However, Wong's shares were used specifically as security in the event payment was not rendered for the principal or interest. Indeed, once DAG had determined EA defaulted on the loan, it moved to take ownership of the full amount of Wong's personal shares of EA's stock.

As further evidence of the fact that Wong personally guaranteed the loan to EA, the two separate documents executing this loan transaction contract with, and are signed by, two distinct legal entities. Wong entered into, and signed, the Pledge Agreement securing the loan as an individual, and not on behalf of EA, or in his capacity as CEO. (Compl. Ex. B at 8). In contrast, Wong signed the Promissory Note granting the underlying loan to EA in his capacity as CEO. (Compl. Ex. A at 5). From these facts, it appears the parties intended to have Mr. Wong personally secure the commercial loan to EA in his status as an individual pledging his own personal property.

California Civil Code § 2787 defines an individual guarantor as one who has pledged property as security for the debt of another. California courts have held that individuals who sign pledge agreements, similar to the one in this case, which secure loans for corporations are guarantors under the law.

///

///

8

In the case of <u>In re Advanced Ribbons and Office Products, Inc. v. U.S. Interstate Distributing, Inc.</u>, an individual pledged all of his shares of the debtor company as additional security in a pledge agreement for a promissory note.  125 B.R. 259, 261 (B.A.P. 9th Cir. 1991).  The court in that case found, pursuant to Cal. Civ. Code § 2787, that the individual was a guarantor under California law because he pledged his stock as security for the obligation of the debtor company.  <u>Id.</u> at 263.  <u>See also</u> <u>Pearl v. General Motors Acceptance Corp.</u>, 13 Cal. App. 4th 1023, 1028 (1993) (In determining whether the pledge agreement constituted a guarantee, the court held that the shareholder pledging his stock was a "guarantor" and the pledge agreement was implicitly a "guaranty").

   Though the Pledge Agreement does not refer to Mr. Wong specifically as a guarantor, nor to the pledge itself as a guaranty, labels in this instance are not dispositive.  Both parties intended to have Mr. Wong pledge his personal assets to secure the loan to EA, which effectively placed Mr. Wong in the role of a guarantor.  Because Mr. Wong guaranteed the debt as an individual, the transaction falls within § 25118(e)(1), and renders inapplicable the usury exemption for commercial loans.  Under California's usury laws, DAG wrongfully charged EA interest on the Note in excess of 10% per annum and, as such, is entitled only to the original principal of $500,000.  EA's Motion for Partial Summary Judgment as to the return of all interest paid to DAG is granted.

///

///

9

**B.   Treble Damages**

Where a lender receives interest at a usurious rate, the borrower may recover treble the amount of interest paid to the lender so long as the action is brought within one year after payment. Cal. Civ. Code § 1916-3. The trial court has broad discretion in determining whether or not to award treble damages. Burr v. Capital Reserve Corp., 71 Cal. 2d 983, 994 (1969). An award of treble damages depends on the relative guilt of the parties initiating the transaction. Fox v. Peck Iron and Metal Co., Inc., 25 B.R. 674, 692 (Bankr. S.D. Cal. 1982). Usury laws are primarily designed to penalize those who take advantage of "unwary and necessitous borrowers." Id. at 692-93.

Although when guaranteeing the loan, Wong may not have officially qualified as a sophisticated investor under the meaning of § 25118(a), the Financial Review of EA (Aff. of Bryan Larrison Ex. A) shows millions of dollars flowing in and out of the company. A balance sheet of that sort indicates that regardless of the net worth of Wong or EA at any given point in time, these parties are all relatively experienced businessmen.

In Fox, the court found that treble damages were not warranted as the parties in that case were represented by experienced businessmen when the transaction was negotiated. 25 B.R. at 692-93. The court in Fox determined that the imposition of such a drastic sanction as treble damages was not appropriate where the parties were at a higher level of sophistication. Id.
///

10

In light of the fact that Wong was not the unwary and inexperienced borrower usury laws set out to protect, this Court finds an award of treble damages excessive and unwarranted in this case. EA's Motion for Partial Summary Judgment as to treble damages is denied.

## CONCLUSION

For the reasons stated above, EA's Motion for Summary Adjudication (ECF No. 30) is GRANTED as to return of all interest, and DENIED as to an award for treble damages. DAG is ordered to return to EA the entire amount of usurious interest totaling $58,519.13. This Court declines EA's request that prejudgment interest, as well as attorney's fees and costs, be awarded.

IT IS SO ORDERED.

Dated: March 7, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

11